O958AMIC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                      22 Cr. 438 (CM)

RAFAT AMIROV,
POLAD OMAROV,

            Defendants.        Conference

------------------------------x

                              New York, N.Y.
                              September 5, 2024
                              2:35 p.m.

Before:

                HON. COLLEEN McMAHON,

                              District Judge

                    APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
JACOB H. GUTWILLIG
MICHAEL D. LOCKARD
    Assistant United States Attorneys

MICHAEL W. MARTIN
    Attorney for Defendant Amirov

XAVIER R. DONALDSON
    Attorney for Defendant Omarov


Also present:  OWEN FOLEY, Paralegal Specialist (USAO)
                NELLY ALISHAEV, Interpreter (Russian)
                ISMAIL DJALILOV, Interpreter (Azerbaijani)

O958AMIC

1           (In open court; case called)
2           THE DEPUTY CLERK:  Your appearance, please.
3           MR. GUTWILLIG:  Good afternoon, your Honor.  Jacob
Gutwillig for the government.  And I am joined at counsel table
by my colleagues, AUSA Michael Lockard and paralegal specialist
Owen Foley.
7           MR. MARTIN:  Good afternoon, your Honor.  Michael
Martin, Lincoln Square Legal Services.  With me on my left is
Mr. Rafat Amirov.
10          MR. DONALDSON:  Xavier R. Donaldson for Polad Omarov.
Good afternoon.
12          THE COURT:  Good afternoon, everybody.
13          What is going on?
14          MR. GUTWILLIG:  Yes, your Honor.  From the
government's perspective, as the Court knows, this morning we
returned a superseding indictment, the S7 indictment, that
charges Rafat Amirov, Polad Omarov, and a third defendant, who
is not in custody, Zialat Mamedov.  The first three
charges—murder for hire, conspiracy to commit murder for hire,
and conspiracy to commit money laundering—have previously been
charged against these defendants.  This indictment adds Count
Four, which is attempted murder in aid of racketeering, and
Count Five, which is possession and use of firearms in
connection with that.
25          So that is the government's update for today.

O958AMIC

1     THE COURT:  Well, a little more than that, but let's
2 start with that.
3     We have a superseding indictment.
4     Mr. O'Neill, would you please arraign the defendants.
5     THE DEPUTY CLERK:  Mr. Omarov, Mr. Amirov, would you
6 stand, please.
7     Mr. Amirov, Mr. Omarov, the United States Attorney for
8 the Southern District of New York has filed a superseding
9 indictment S7 22 Cr. 438.  It charges both of you with murder
10 for hire, Count One; conspiracy to commit murder for hire,
11 Count Two; conspiracy to commit money laundering, Count Three;
12 attempted murder in aid of racketeering, Count Four; use and
13 possession of firearms in furtherance of the attempted murder.
14     Mr. Omarov, have you received a copy of that
15 indictment?
16     MR. DONALDSON:  Your Honor, on behalf of Mr. Omarov,
17 we have received a copy of the indictment.  There is, what we
18 believe, a possible legal issue that we have to address first,
19 small or maybe large.  It appears that Mr. Omarov was
20 extradited here on the first three charges.  The new two
21 charges he was not extradited here on those charges.
22     THE COURT:  Because they hadn't been brought yet.
23     MR. DONALDSON:  So I believe that they have to
24 receive from the government --
25     THE COURT:  You believe that they have to what?

1    MR. DONALDSON:  They have to get consent from the
2    Czech Republic to add those new charges.
3    THE COURT:  Well, maybe they do, but that's a motion
4    to dismiss.  You either enter a plea of not guilty on behalf of
5    your client or I will enter a plea of not guilty on behalf of
6    your client.  And if you think that there is a reason to
7    dismiss Counts Four and Five because it's improper and the
8    Czech government needed to consent, that sounds to me like a
9    motion that you make.
10   MR. DONALDSON:  In that case, then, yes, we have
11   reviewed the indictment with Mr. Omarov and the new charges,
12   and he wishes to enter a plea of not guilty.
13   THE COURT:  That plea is obviously entered with the
14   absolute reservation that Mr. Donaldson has made on behalf of
15   his client that Counts Four and Five are improperly brought
16   because the Czech government was not notified of them, and we
17   will work all that out over, I am sure, the next few weeks.
18   MR. DONALDSON:  And the defense does not consent to
19   it.
20   THE COURT:  Right. No consent.  No consent.  No
21   consent.
22   So the fact that the plea has been entered shall not
23   be deemed by this Court to be any sort of consent or admission
24   as to the propriety of the bringing of additional charges
25   against Mr. Donaldson's client.

1           Mr. Martin, do you have similar complications?  I
2 don't think so.
3           MR. MARTIN:  The irony here is that I don't, given the
4 fact that my client was effectively kidnaped and, as a result,
5 doesn't have the same contractual comity concerns with the
6 country from which he has come.  I am not saying that to be
7 humorous.  I am just making the point.
8           My client has not actually received a copy.  I have
9 held the copy, and I have reviewed the charges with my client,
10 and he is prepared to plead not guilty today to those charges.
11          THE COURT:  Okay.  Then that plea will be entered.
12          So let's get an update on where we are in terms of
13 discovery.
14          MR. GUTWILLIG:  Your Honor, discovery has been
15 substantially produced in this matter.  There may be some
16 additional clean-up, and there may be additional discovery but
17 not much here.  I should say there will not be much additional
18 unclassified discovery in this case.
19          THE COURT:  Let's talk about unclassified.  And then
20 let's talk about classified, because to the extent we can talk
21 about classified, we need to discuss it.
22          MR. GUTWILLIG:  So, your Honor, we have produced the
23 substantial bulk or all of the unclassified discovery.  We
24 anticipate that there may be a small amount of classified
25 discovery in this case that has not been produced.

1       THE COURT:  And I had set a schedule for making
2  motions with respect to that, the government motions with
3  respect to that discovery, which I think is the end of this
4  month, and we need to get it on the table as to where we are in
5  that process.
6       MR. GUTWILLIG:  Yes, your Honor.  The government
7  expects to make a filing on September 30, expects to make a
8  filing pursuant to CIPA Section 4, and we will of course, if
9  needed, advise the Court in a different setting if there is
10 additional information as to that.  And as is on the docket,
11 and as the Court knows, the government and the Court had a
12 classified *ex parte* Section 2 conference earlier today about
13 some of these matters.
14      THE COURT:  That is true, we did.  And I do believe
15 that I heard, and I do not believe that this is classified,
16 that we may have two separate iterations of Section 4 motions.
17 Is that not correct?
18      MR. GUTWILLIG:  That's correct, your Honor.
19      THE COURT:  I think that's information that the
20 defense is entitled to.
21      MR. GUTWILLIG:  Yes, your Honor.
22      We expect to make a Section 4 filing on the current
23 deadline of September 30.  And we anticipate that there may be
24 a supplemental filing, and we expect with respect to timing,
25 and understanding our request to the Court, that the additional

O958AMIC

1  materials, if any, that we would need to submit a supplemental
2  motion for, we expect would be completed, with the Court's
3  permission, by the end of October.
4      THE COURT:  Okay.  What else?
5      MR. GUTWILLIG:  There is nothing more from the
6  government, your Honor.
7      THE COURT:  Mr. Martin.
8      MR. MARTIN:  Your Honor has set a September 30 motion
9  date, motion deadline for defense motions.
10      THE COURT:  The defense motions other than CIPA
11  Section 5.
12      MR. MARTIN:  Other than CIPA Section 5.
13      THE COURT:  How can you make a CIPA Section 5 motion
14  if they haven't made a CIPA Section 4 motion?  That would be
15  ridiculous.  I am ridiculous but that would be really
16  ridiculous.
17      MR. MARTIN:  So defense motions other than --
18      THE COURT:  Other than.
19      MR. MARTIN:  -- under CIPA 5.
20      Mr. Amirov will be making such motions in a timely
21  manner.  I presume the superseding indictment hasn't changed
22  that.  If for whatever reason it has, we will alert the Court
23  immediately.
24      THE COURT:  Thank you.  That's helpful.
25      I glanced at the superseder and it didn't seem to me,

O958AMIC

other than adding two charges arising out of the same facts, it didn't seem to me to add very much to the case. And I am not expecting that it will give you problems. But if it gives you problems, you will let me know. Obviously, if the government ends up doing its Section 4 in two tranches, which apparently they might, but they can't tell me now if they are going to or not, you will get two tranches of Section 5.

MR. MARTIN: I understand that.

THE COURT: Fair is fair.

MR. MARTIN: The only thing I will say with regard to the new counts, Count Four probably expands the amount of potential evidence that could have come into trial prior to it being there. In other words, I was given a tranche of discovery which involved an Eastern District case that otherwise was unrelated to my client. But now I have reason to believe, given that Count Four is in, it's going to have an effect on this trial. I am going to look at that discovery far more closely than I did before. And that was my one issue with regard to September 30. But at this moment I don't foresee needing an extension, your Honor.

THE COURT: Okay.

Mr. Donaldson.

MR. DONALDSON: Your Honor, I think I agree with counsel. But I will say that, notwithstanding the arraignment issue and the new counts issue, that possible motion that

O958AMIC

1   likely will be coming, I do have some concerns about whether or
2   not these two charges -- well, I will let the Court know
3   whether or not I will be filing motions related to those two
4   charges.  I have particular issues with whether or not, one,
5   they should be here --
6           THE COURT:  Obviously, you're going to be filing in
7   the alternative.  You're going to file to throw them out, and
8   then you're going to file in case I don't throw them out.
9           MR. DONALDSON:  Right.  If something else comes up
10  that I think I need to bring to the Court's attention that
11  would require me to ask for some more time, I will do that.
12          THE COURT:  Okay.  Just because I am trying to move
13  the buggy down the road, is everybody okay with clearances?  Is
14  everybody ready to go on Section 5s once the government makes
15  the Section 4?
16          MR. DONALDSON:  I hope to be okay soon.
17          MR. MARTIN:  And I am okay, your Honor.  I have been
18  cleared.
19          THE COURT:  That's a big difference between Mr. Martin
20  and Mr. Donaldson.  And I hope you will be okay too.  Because I
21  will take that to mean you are not yet cleared.
22          MR. DONALDSON:  That's correct.
23          THE COURT:  What else do we need to address today?
24  Obviously, I am going to have to get to work on this case
25  pretty soon.

1          MR. DONALDSON:  Judge, some personal issues regarding
2     Mr. Omarov personally.  It relates to MDC issues.  I don't know
3     if you want to talk about that now, but there are some
4     significant MDC issues that relate to Mr. Omarov that I want to
5     bring to the Court's attention.
6          THE COURT:  Why don't you just do that because you're
7     standing up.
8          MR. DONALDSON:  We have been going through some
9     significant challenges with getting Mr. Omarov the appropriate
10    medical attention.  I am sure that's happening with a lot of
11    people, but Mr. Omarov is in a particularly different situation
12    because he was extradited over here from another country with
13    particular medical issues.  Apparently, without going into too
14    much detail, he has been examined for certain things, and it's
15    been decided that he needs certain procedures done and those
16    procedures are not happening.  We have asked the MDC to get to
17    those quickly.  It doesn't seem like that's happening in a
18    quick enough fashion, as Mr. Omarov is apparently suffering
19    more from a lack of a procedure that the MDC has agreed must be
20    done.
21         I spoke to him this morning.  He informed me that it's
22    getting worse and he is not getting appropriate care, and there
23    is an agreement that a certain procedure must be done, but for
24    whatever reason it's not being done as quick as possible at
25    MDC.  I e-mailed them several times, I have been responded to

O958AMIC

1   several times, but for whatever reason this procedure, again,
2   that MDC has agreed must be done, is not happening.
3              THE COURT:  Does the government know anything about
4   this?
5              MR. GUTWILLIG:  No, your Honor.  We are happy to speak
6   with Mr. Donaldson and see what the concern might be.
7              THE COURT:  Please do.  If it's been ascertained that
8   Mr. Omarov needs some sort of medical care, he should be
9   getting the medical care.
10             MR. GUTWILLIG:  Of course, your Honor.  We weren't
11  aware of this, and we will speak with Mr. Donaldson and reach
12  out to the BOP if needed.
13             THE COURT:  What else, Mr. Donaldson?
14             MR. DONALDSON:  That's all I have right now.
15             THE COURT:  Mr. Martin, do you have anything else?
16             MR. MARTIN:  I certainly don't have anything nice to
17  say about MDC medical care.
18             THE COURT:  I am sure that's true.
19             MR. MARTIN:  I understand that you would understand
20  that.  We have made similar attempts to get medical care,
21  repeated e-mails, letters.  Mr. Amirov has effectively waved us
22  off at this point because of the lack of attention that
23  ultimately comes about with regard to these requests.  If we
24  need additional assistance, we will turn to the government as
25  well, your Honor.  Thank you.

1           THE COURT:  Anything else?

2           Mr. O'Neill.

3           THE DEPUTY CLERK:  The next date we have on our

4  calendar is January 16.

5           THE COURT:  As a control date?

6           THE DEPUTY CLERK:  Correct.

7           THE COURT:  So everybody knows, I am switching out law

8  clerks.  Unfortunately, I am losing the services of Adam King

9  who, because of his military background, was really easy to

10 clear.  Tomorrow, as a matter of fact, I am losing the benefit

11 of his services.  The new law clerk who is in the process of

12 getting clearance for this case is named Cameron Molis,

13 M-O-L-I-S, and he will be your point of contact behind

14 Mr. O'Neill.

15          Anything else that we need to convey to these folks?

16          MR. DONALDSON:  Not from the defense, your Honor.

17          MR. GUTWILLIG:  No, your Honor.  I believe time has

18 already been excluded through January 16th of 2025.

19          THE COURT:  Mr. O'Neill, do you have a list of dates

20 that I sent you, an e-mail of dates when I am going to be out?

21 I sent a list of dates when I was going to be out of the

22 district.  I want to be absolutely sure that January 16 is not

23 the week of January 13.  I think it's not.

24          Never mind.  I will see you in January, but you will

25 hear from me because I will be ruling as promptly as possible.

O958AMIC

1  I am told that they have upgraded the computers in the SCIF so
2  it shouldn't take me quite as long to type as it has in the
3  past.
4           Thank you, everybody.
5           (Adjourned)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300