USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-29-25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

UNITED STATES OF AMERICA,

    -against-

RAFAT AMIROV AND POLAD OMAROV,

    Defendants.

———————————————————————x

S8 22 CR 438 (CM)

## SENTENCING DECISION

McMahon, J.:

The court, for its decision on sentencing:

<u>Calculation of the Sentencing Guidelines</u>

The guidelines calculation appears to be in dispute, as least as between Mr. Amirov and the Government/Probation.

Counts 1, 2, 3 and 4 are grouped together. All of these offenses derive from the same conduct.

Assuming arguendo that money laundering is the crime that drives the calculation of the guidelines for the grouped counts – though as defense counsel have noted, that is very much a case of the tail wagging the dog -- there are two possible starting points for calculating the base offense level for money laundering. Section 2S1.1(a)(1) applies by its terms when the laundered money was "derived from" some underlying illegal conduct. Section 2S1.1(a)(2) applies whenever subsection (a)(1) does not – which is to say, when the laundered money was not "derived from" the underlying illegal conduct.

The disputed issue is the meaning of the phrase "derived from."

1

Mr. Amirov's counsel argues that the laundered funds in this case were not "derived" from the underlying offense (which in this case is murder for hire). Rather, he argues that the $30K in laundered funds represents money paid to the defendants in order to induce them to commit the underlying crimes of conviction. Amirov argues that money paid to induce someone to commit a crime is not money "derived from" the underlying crime – it is, rather, money "paid for" the underlying crime.

The argument that there a distinction between the money consisting of the "proceeds" of an underlying crime and money used to "promote the commission" of a crime finds some support in the specific offense characteristic defined in §2S1.1(b)(1)(B), which enhances the base offense level if the defendant knew or believed that any of the laundered funds were **either** the proceeds of, **or** were intended to promote, certain types of criminal activity. Those are, for purposes of the enhancement, two separate types of funds.

Amirov's argument also finds support in the jury's verdict on the money laundering count: the jury found the defendants guilty only of laundering fund with the intent to promote the carrying on of specified unlawful activity, while acquitting them of laundering funds that represented the proceeds of specified unlawful activity.

Reliance on subsection (a)(2) rather than subsection (a) (1) of §2S1.1 results in what Mr. Amirov's counsel correctly describes as a "quite substantial" difference in the money laundering guidelines calculation. Let's consider his client's guidelines. If Section (a)(1) controls, the adjusted base offense level is 33 -- which is the base offense level for the underlying offense of murder for hire, *see* §2A1.5(a) — plus 4, because money was offered in order to induce the commission of murder – plus a further 2 level increase pursuant to §2S1.1(b)(2)(B) because the defendant was convicted of a count under 18 USC § 1956. However, if Section (a)(2) controls,

then the adjusted base offense level is 12 -- 8 plus 4 levels based on the amount laundered, (which was $30,000) -- plus 6, because in this case the defendants knew that the laundered funds were intended to promote an offense involving firearms, *see* §2S1.1(b)(1)) -- plus 2 (because the defendants were convicted under 18 USC § 1956) – for a total of 20 points. Adding 4 points to the adjusted base offense level for Amirov's leadership role in the offense leads to a Total Offense Level of 43 if the guideline is calculated under (a)(1), but just 24 if the guideline is calculated under (a)(2). That is indeed a substantial difference – at a Criminal History Category of I, it is the difference between a life sentence (or in this case, 600 months, which is the statutory maximum possible sentence that could be imposed for the four counts of conviction) and a sentence of 51-63 months.

Of course, if the offense level for money laundering is calculated under §S1.1(a)(2), and the total offense level is 24, then money laundering ceases to be the crime that drives the grouping calculation – which, frankly, makes sense in this case, because the driving criminal force here was killing Ms. Alinejhad, not using the money that one was paid to kill her to buy a gun. If (a)(2) is the relevant subsection for guidelines purposes, then the underlying crime of murder for hire becomes the driver – and the calculation under § 2A1.5 offense (solicitation to commit murder) becomes as follows: adjusted base offense level of 37 – 33 plus 4 additional points because the murder involved the payment of money – plus 4 points for a leadership role for Amirov, or a total offense level of 41 and a sentencing range of 324-404 months on Counts 1-4. To which one must add at least 60 months for Count 5, the gun count.

Because I agree with Probation that Mr. Omarov gets a 3 point enhancement for role in the offense, rather than a 4 point enhancement, his total offense level is 42 if §2S1.1(a)(1) is used to calculate the guidelines (with a sentencing range on Counts 1 through 4 of 360 months to life),

3

but only 40 – the adjusted total offense level for murder for hire, rather than money laundering – if the money laundering is calculated using §2S1.1(b)(2) (with a sentencing range of 292-365 months).

So which metric do I use?

It is not at all clear.

This case presents me with the issue that the Second Circuit declined to reach in *United States v. Dhafir,* 577 F. 3d 411 (2d Cir. 2009). In that case, as in this one, the parties disagreed about whether the money laundering count base offense level should be calculated pursuant to §2S1.1(a)(1) or § 2S1.1(a)(2). The Court of Appeals, in its infinite wisdom, declined to answer that question, or to decide whether my dear late friend, Judge Mordue of the Northern District of New York, had correctly concluded that (a)(2) rather than (a)(1) controlled the Guidelines calculation. Instead, the court of appeals remanded the case to Judge Mordue with the suggestion that he simply rely on the statutes of conviction to set a proper sentence, rather than trying to figure out which section applied to the calculation of the money laundering guideline.

I certainly can see both sides of the argument over the meaning of the phrase "derived from." On the one hand, as Mr. Amirov's counsel points out, the $30,000 in laundered funds in this case was not "derived from" the attempted murder of Masih Alinejhad in the same sense that laundered funds are "derived from" illegal drug sales or illegal securities transactions or from activities that constitute wire or mail fraud. Murder, unlike those other crimes is not a crime that ordinarily generates proceeds. The $30,000 that was paid to the defendants was not the "proceeds" of the murder.

However, the defendants personally "derived" the $30K that they were convicted of laundering from the underlying activity in the sense that they were paid that sum of money in

4

order to get them to commit the underlying crimes. They did not personally "derive" the money from anything other than their participation in the underlying illegal activity— even though the funds could in no way be considered "proceeds" of the underlying crime of conviction.

I am perfectly happy to follow the Second Circuit's suggestion that I not get my knickers in a twist trying to figure out which of these two provisions governs the calculation of the Guidelines in this case so that I can sentence the defendants appropriately. But I am required to calculate the Guidelines. So, I will do so using both rules – in the alternative.

I find that, if §2S1.1(a)(1) applies, and the payment of money to induce the commission of the crime means that the laundered proceeds were "derived from" the underlying offense, then Probation has calculated the Guidelines correctly. The Total Offense Level for Mr. Amirov is 43, based on an adjusted base offense level of 37 – which is 33, the base offense level for solicitation to commit murder under §2A1.5, plus a 4 level increase because money was offered in order to induce the commission of murder, pursuant to §A1.5(b)(1); with a further 2 level increase pursuant to §2S1.1(b)(2)(B) because the defendant was convicted of a count under 18 U.S.C. § 1956, and finally a 4 level increase because Amirov was a leader of the criminal organization tasked with carrying out the murder and he directed others in the commission of the crime. I reject Mr. Martin's argument that the evidence does not support Amirov's role as leader and adopt the Government's reasoning on this point.

At a total offense level of 43 and a criminal history category of I. Amirov's guideline for grouped Counts 1, 2, 3 and 4 is 600 months – the statutory maximum sentence for those crimes if sentences consecutively -- plus a mandatory consecutive sentence of at least 60 months on Count 5.

I further find that, if §2S1.1(a)(2) applies, because the laundered proceeds were not "derived from" the underlying offense, but rather were paid to promote the commission of the underlying offense, then the Guidelines calculation should be as follows: a Total Offense Level for Mr. Amirov of 41, which is a base offense level of 33 for murder for hire, plus 4 points for the fact that it involved the payment of money to procure the murder (§2A1.5), plus 4 points for his leadership role. This leads to a Guidelines sentence of 324-405 months for Counts 1-4, plus at least 60 months consecutive for Count 5.

As for Omarov: I find that, if §2S1.1(a)(1) applies, then Mr. Omarov's guideline calculation leads to a total offense level of 42 rather than 43, by virtue of the application of only a 3-point enhancement for his role in the offense. The calculation is otherwise the same as Mr. Amirov's calculation, which is to say 33 plus 4 for the base offense level of the underlying crime, plus 2 points because of the Section 1956 conviction, and then 3 points for a role adjustment. This results in a Guidelines sentence of 360 months to life, plus at least 60 months for Count 5.

However, if §2S1.1(a)(2) applies, then Mr. Omarov's calculation is base offense level of 37 (33 plus 4) for murder for hire, plus 3 points for Omarov's role in the offense, leading to a total offense level of 40 and a sentencing range of 292-365 months – again plus at least 60 months consecutive for Count 5.

Having made the relevant calculations, and having considered both sets of guidelines ranges, I decline to make a final determination about whether §2S1.1(a)(1) or (a)(2) applies to the money laundering count, as the Second Circuit did at *Dhafir*. In an exercise of my *Booker* discretion, I intend to impose a sentence in accordance with the statutory scheme and my own assessment of the seriousness of the crimes of conviction and the personal characteristics of the defendants, as suggested by the Second Circuit in *US v. Dharfir*.

Concurrency

There is one other point I must discuss briefly.

I recognize that I have the power to impose concurrent or consecutive sentences on Counts 1 through 4. In an exercise of my discretion, I intend to impose concurrent sentences on those counts. Concurrent sentences are commonly imposed, by this court, in this district, and elsewhere, when multiple counts of conviction arise from the same conduct. In this case, the multiple counts of conviction arise from the same conduct and can properly be sentenced concurrently.

Counts 1, 2 and 4 charge essentially the same crime in three separate ways – murder for hire, conspiracy to commit murder for hire, and murder in aid of racketeering. There was only one planned murder in this case – the planned murder of Ms. Alinejhad. The reason the Government assigns for not sentencing concurrently on Counts 1, 2 and 4 – which are essentially one and the same murder -- is that, to use a colorful phrase from its sentencing memorandum, the defendants planned to "soak the streets of Brooklyn in the blood" of Ms. Alinejhad as part of a politically motivated assassination perpetrated at the behest of the Government of Iran. It seeks consecutive sentences so that the court, without transgressing the statutory maximum term of 10 years on each of these counts, can impose a sentence that accords with a Guidelines calculation computed using §2S1.1(a)(1).

However, I am not convinced that the political nature of this foiled assassination plot warrants my treating what are essentially three ways of charging the same activity any differently than I would treat any other case in which a defendant was convicted of murder for hire, conspiracy to commit murder for hire, and murder in aid of racketeering, all for the same conduct, which (thankfully) did not result in any physical injury or death to any person. The

sentences for those three crimes should run concurrently because they are simply three ways of charging the same conduct.

The money laundering doubles the sentence even if imposed concurrently, but adds nothing to the concurrency analysis, because the money that was laundered was paid to get the defendants to commit the crimes of conviction under Counts 1, 2 and 4. In other words, it was part and parcel of the scheme charged in Counts 1, 2 and 4 – all of which involved the same scheme, the same proposed murder. Therefore, the sentence on the money laundering count should, in my opinion, also run concurrently with the sentences on Counts 1, 2 and 4.

I take into account the fact that Probation has recommended that the sentences on these four counts be imposed concurrently.

<u>Sentencing Decision</u>

I find that the nature and circumstances of the offense and the history and characteristics of the defendants, augur for sentences imposed at the statutory maximum level for each of the crimes of commission in Counts 1-4.

In choosing where within the statutory scheme to sentence the defendants, it is highly relevant to the court that the intended murder was a politically motivated assassination attempt.

It is highly relevant that the defendants were career criminals, who were jockeying for position in a criminal enterprise – a gang of thugs – which committed numerous serious crimes, including theft, extortion, assault, kidnapping and murder, over the course of many years. The fact that the defendants live in societies where criminal elements police the streets and are considered to be heroes by their local constituents does not augur in favor of a lesser sentence where, as here, they chose to commit crimes far beyond the borders of their local communities – indeed, beyond the borders of their countries – and in a nation where it is a crime to murder

someone whose political views are disliked. Having chosen to commit a heinous crime here, the defendants cannot fall back on their different cultural background to excuse their conduct.

It is highly relevant that the defendants could be and were motivated by money – an intended payment of a half million dollars, far exceeding the amount of money actually paid and actually laundered -- to kill another human being.

It is highly relevant that neither defendant appears to have had any motive other than money and to enhance their position and power in Gulici (a faction of the Russian Mob) to participate in this crime.

It is highly relevant that this was a cross-border crime.

It is highly relevant that foreign citizens who were agents of a foreign power conspired to commit, and tried to commit, and almost succeeded in committing, a murder inside the United States— where, presumably, an American citizen like Ms. Alinejhad should be safe in her own home.

All of these facts inform my sentencing decision.

Considering the § 3553(a) sentencing factors, a lengthy sentence is needed in this case to punish the defendants for their extremely serious crime and to send a message to other criminal gangs and other foreign powers that this sort of conduct will not be tolerated by the United States.

The fact that the money laundering sentence I intend to impose in connection with Count 3 is twice as long as the sentences on the other three counts -- despite the fact that the crime of conviction only involved the laundering of $30,000 -- bothers me not a whit. I can and do take into account the fact that the defendants were supposed to be paid far more if they had succeeded in their nefarious plan -- $500,000 – so the fact that they were actually paid (and subsequently

laundered) just a fraction of that sum understates the true amount of money that was part of this plot. Moreover, the fact that the defendants would commit a murder for ANY amount of money causes me to conclude that they should be punished to the maximum extent permitted by law.

I note that Probation reached the same conclusion – namely, that the money laundering count should receive a sentence in excess of the sentences on the other three counts. Mr. Kim did not recommend that I sentence at the statutory maximum, but I have concluded that nothing less than the statutory maximum sentence will satisfy the goals of the sentencing statute.

I will, therefore, impose the following sentences on both defendants:

    On Count 1 – 120 months concurrent;

    On Count 2 – 120 months concurrent;

    On Count 3 – 240 months concurrent;

    On Count 4 – 120 months concurrent;

for a total of 240 months.

    On Count 5 – 60 months consecutive.

Thus, defendants' total sentence is 300 months, which is 25 years. I note that the defendants will be very old men by the time they have served this sentence and been deported to their native lands.

I specifically find that this sentence is sufficient but not greater than necessary to achieve the goals of sentencing as set out in the federal sentencing statute, 18 U.S.C 3553(a).

I am not imposing a term of supervised release. *See* Sentencing Guidelines U.S.S.G. § 5D1.1(c). The defendants will cease to be present in the United States when they cease to be guests of the Bureau of Prisons.

Probation does not recommend the imposition of a fine. I concur with that recommendation.

The Government is not seeking restitution or forfeiture in the case of these two defendants.

Each defendant is required to pay a special assessment of $500 which is due and payable immediately, and which will be deducted from prison wages until satisfied.

### Conclusion

Sentence was imposed earlier today in accordance with the reasoning of this decision.

This is a written decision.

The Clerk of Court is directed to terminate the criminal cases against Rafat Amirov and Polad Omarov under this docket number.

Dated: October 29, 2025

_____
U.S.D.J.

BY ECF TO ALL COUNSEL